Morphy, J.
delivered the opinion of the court.
The plaintiff sued out an order of seizure and sale, for part of the price of a plantation and slaves, sold to the defendant. The proceedings were enjoined on the latter on the ground that there were defects in his title and encumbrances on the property, which give rise to a just and reasonable fear on his part of being disquieted in his possession by an action of mortgage or of revendication. There was below a verdict for the defendant, whereupon a judgment was rendered making the injunction perpetual. The plaintiff appealed.
On the 1st of April, 1835, Benedict & .Stanfield, the immediate vendors of plaintiff, purchased two arpents out of the eight sold by them to [450] plaintiff, and by him to defendant, from Estival Baudoin, for the sum of $3250. Previous to this sale, to wit, on the 19th of February preceding, the said Estival Baudoin, jointly with Sylvain Baudoin and Jean Baudoin, had entered into an agreement with Benedict & Stanfield, by which they had promised and bound themselves to sell and make over to them within a delay not exceeding thirty days,- their three adjoining plantations, measuring together eight arpents front to the Bayou Lafourche; the promisees obligated themselves to purchase the three tracts for $13,000, to be paid cash down at the passing of the sale to them ; and as an earnest they paid a thousand dollars, which sum, it was agreed, should be forfeited, if they did not comply with their promise to purchase and pay within thirty days from the date of the agreement. The wife of Estival Baudoin died on the 23d of March following, leaving several heirs ; the two arpents subsequently sold by him to Benedict and Stanfield, are proved to have been acquired during his marriage with the deceased.
Under these facts the defect complained of in plaintiff’s title, is that the sale of these two arpents by Estival Baudoin after the death of his wife, conveyed only his undivided half of the property which had belonged to the community, and that the rights of her heirs to the other half have never been legally divested.
It is contended on the part of the appellant, that under articles 2437 and' 2488 of our Code, the promise to sell amounted to a real sale, to which a resolutory condition was attached by the joining of an earnest, but that the' parties not having taken advantage of this condition, the sale became absolute, and that its validity cannot be affected by the subsequent death of the vendor’s wife.
We cannot concur in this view of the agreement entered into by these parties on the 19th of February, 1835. We understand article 2437 to [451] mean, that a promise to sell, when the thing to be sold and the price of'it are agreed upon, is so far a sale that it gives to either party a right to claim recta via, the delivery of the thing or payment of the price; but such a- promise does not place the thing at the risk of the promisee, nor does it transfer to. *274 Mm the ownership or dominion of it. If by consent of both parties a promise to sell is cancelled, such an agreement could not be viewed as a retro-cession of the property; and third persons having a general mortgage recorded against the promisee would have acquired no right or lien on the same, because it never belonged to their debtor. Troplong, Yente, vol. 1, No. 130 ; Pothier, Yente, No. 481; Toullier, vol. 9, No. 163. In this ease the promise to sell is made in terms and under conditions which exclude all idea of an actual sale. It was to be executed at a future day and within a given time, and an earnest was paid by the promisees. Each party had the right of receding from the agreement, the promisees by losing the earnest money, the other party by returning the double of its amount, La. Code, art. 2438. But besides the promissors intended to be bound by this agreement only during thirty days, neither party having called for its execution within that time, it became null and void. Troplong, Yente, vol. 1, No. 134; Pothier, Yente, No. 480. Ear from transferring the property to Benedict & Stanfield, this promise could not even have been enforced against Estival Baudoin as an absolute obligation to sell, because although an aggregate amount of $13,000 stipulated for the eight arpents, no separate price was fixed or agreed to for the two arpents, which were his individual property; he was divested of his ownership then, only by the sale of the first of April, after the death of his wife; the interest of his children he could not and did not convey by that act; the defendant, Aubert, is therefore entitled to be secured against eviction on account of their rights.
[452] As to the encumbrances on the land, they were all made known to defendant, except a judgment recorded in favor of one Eggleston for $247, which was not disclosed at the time of the sale, having been overlooked by the parish judge, who drew up the conveyance to defendant. The evidence renders it probable that this judgment has been satisfied, but is not such, however, as should preclude defendant’s right to require security against this mortgage.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be so amended, that the injunction sued out by defendant, instead of being perpetual, be maintained until plaintiff shall give security in the sum of $1900, according to article 2535 of the Louisiana Code, the defendant and appellee paying the costs of this appeal.