Thomson, J.
The following is an ordinance of the city of Denver, numbered 21, which went into effect on the 9th day of Apr.il, 1895:
“ Section 1. City license inspectors shall be appointed by the city treasurer with the consent and approval of the mayor, and may be removed for cause at any time by said treasurer and mayor. They shall be limited to four in number, one *148 of whom shall also perform the duties of license clerk and have immediate charge of the inspectors and the license collection department. They shall receive a salary of $100 per month each, payable out of the license collection department fund.
“ Sec. 2. It shall be the duty of the license inspectors to devote their undivided time and attention to the duties devolving upon them by virtue of being such. They shall cause all persons who are required under the law and ordinances of the city to have a license, to take out the same, and to see that it is promptly and fully paid for in the manner prescribed by law.
“ They shall rigidly inquire into any and all violations or alleged violations of any license law or ordinance, and file complaints in the police magistrate’s court against any and all persons who are probably guilty of a violation of any such law or ordinance, or any portion thereof. The license collection department shall, in all doubtful cases, confer with the law department of the city before filing information before the police magistrate’s court, and take advice as to action in the premises.
“ This department shall see that all licenses are posted and kept in a conspicuous place as required by the provisions of the ordinances of - the city, as well as such other provisions regulating the wearing of badges, number of vehicles, etc., and it shall be the especial duty of this department to see that all the revenue belonging to the city and accruing thereto through the department, is paid, so that the city treasury shall receive the benefit thereof. It shall, at least ten days before the expiration of licenses, notify the holders of said licenses of the fact, calling upon them to at once make provision for the renewal of the same, if they so desire.”
On the 23d day of April, 1895, in pursuance of this ordinance, Sam J. Morgan was appointed a license inspector. The appointment was made by the city treasurer, Edwin F. Arthur, with the consent and approval of the mayor, Thomas S. McMurray. The appointment and approval were in writ *149 ing. On the 16th day of April, 1896, the city treasurer addressed the following communication to the city clerk:
“ Hon. D. H. Allen,
“ City Clerk.
“ Dear Sir: I have this day removed S. J. Morgan as license inspector.
“Yours truly,
“E. F. Arthur,
“ City Treasurer.”
On the 28th day of April, 1896, the treasurer communicated further with the clerk, as follows:
“ D. H. Allen,
“ City Clerk.
“Dear Sir: In compliance with art. Ill, sec. 1 of the City Charter, I beg to advise that the cause of dismissal of S. J. Morgan as license inspector was due to unsatisfactory service.
“ Yours truly,
“ E. F. Arthur,
“ Treasurer.”
The mayor did not approve the action of the treasurer, and Mr. Morgan continued,-notwithstanding the-attempted removal, to discharge the duties of license inspector under the direction of the mayor, and against the will of the treasurer, from the 28th day of April, 1896, until the institution of this proceeding; but payment of his salary for that period was refused, and he seeks judgment for the- amount.
The question involved in the case is whether that part of the ordinance which makes the consent of the mayor necessary to the appointment, and requires his concurrence in the removal, is valid. On behalf of the city it is contended that under the provisions of the city charter relating to the class of appointments to-which this belongs, the power to appoint license inspectors, and the power to removfe them, resides in the treasurer alone, and that the provisions of the ordinance *150 respecting the concurrence of the mayor in either the appointment or the removal, are nugatory. The court below adopted this view, and gave judgment accordingly.
The following are the provisions of the charter, bearing directly, or remotely, upon the question :
“article 2.
“Sec. 20. Except as otherwise provided in this act, the city council shall have the management and control of the city finances, and all property of the corporation, real, personal and mixed, and power by ordinance; * * * Tenth, exclusively to provide for the licensing, regulating and taxing of all lawful occupations, business places, trades, professions, amusements, places of amusments, the carrying of passengers, goods or merchandise, and the use of horses or other animals, and vehicles of all kinds ; Provided, that such licenses shall be granted by the fire and police board only.”
“Sec. 23. The city council shall have power to provide for the employment of such clerks and other persons in any of the departments of the city government, as the exigencies of the public service may demand.”
“ARTICLE 3.
“Sec. 2: There shall be the following executive departments : 1. A department of finance. 2. A department of law. 3. A department of public works. 4. A department of public health and safety. 5. A department of parks. 6. A department of supplies.
“ See. 3. The department of finance shall include a bureau of audit and account, of which the city auditor shall be the head, and a bureau of the treasury, of which the city treasurer shall be the head. The city attorney shall be the head of the department of law; the board of public works of the department of public works; the mayor of the department of public health and safety; the park commission of the department of parks ; and the superintendent of supplies of the department of supplies. All subordinate officers and *151 employees except of said boards and commission, shall be appointed in writing by the heads of their respective departments, the appointments to be filed with the city clerk, and all subordinate officers and employees of each board or commission shall be appointed by resolution of such board or commission.”
“Sec. 5. The city clerk, city treasurer and city auditor may each appoint a deputy, at a salary not exceeding fifteen hundred dollars ($1,500) for the deputy city elerk and deputy city auditor, and eighteen hundred dollars ($1,800) for the deputy city treasurer, per annum, payable monthly, each of whom may perform any of the duties of his principal and for whose acts his principal shall be responsible, and provision may be made by ordinance for the employment and compensation of any other necessary assistants for the mayor, city clerk, city treasurer, city auditor, city engineer and city attorney, for whose acts the principals shall respectively be responsible. Each department shall promptly furnish to the mayor or city council any information which may be called for in relation to its affairs. Any appointed officer or employee may be suspended or removed by the officer, board or commission making the appointment, for cause, but not for political reasons, and the cause shall be stated in writing.”
“ Sec. 19. The city treasurer shall issue all licenses and permits which may be authorized and granted in pursuance of this act, and no application for any license or permit shall be granted until the fee has first been deposited with the city treasurer.”
“Sec. 44. The department of public health and safety shall include * * * a police - commissioner, of the bureau of police; an excise commissioner, of the bureau of excise; a health commissioner, of the bureau of health. * * * The fire commissioner, police commissioner and excise commissioner, shall constitute the fire and police board of the city of Denver, and all the operations of the bureaus of fire, police and excise, shall be subject to the general control of said board.”
*152 “ Sec. 47. * * * The fire and police board shall perform all executive functions of the city, in the granting, refusal and revocation of all licenses of the city of Denver, including licenses for the sale of intoxicating and malt liquors.”
The judge of the district court delivered a written opinion, in which, after quoting sections 2, 8 and 5 of article 3, and saying in relation to section 3, “ this section terms the auditor’s office and the treasury each a department,” expressed himself as follows :
“ By the provision of section 3, the heads of the respective departments have the exclusive power to appoint the subordinate officers and employees of the department. The city treasurer is made the head of the bureau of the treasury, which is made a part of the department of finance, and is one of the heads of departments meant by this. section, when it assigns the appointing power for all subordinate officers and employees of the treasurer’s office and bureau of the treasury within the executive department, within the department of finance, it being a designated component part of the same, with a distinct department head designated in tbe same section.
“ The purport of ordinance No. 21 is, and the intention was (under the power delegated by section 5 of tbe charter), to mate provision for the employment and compensation of assistants for the city treasurer to be subordinate officers or employees of the department of finance and the bureau of the treasury within said department, of which the treasurer is the designated head and has the appointing power under said section 3.
“ The ordinance, in so far as its provisions are within the charter provisions, is valid, but if any of its terms are in conflict with the charter, such terms are void. This is the rule of law in such cases.
“ The opinion of the court is that under the existing ordinance No. 21, of 1895, and the charter of the city of Denver, the city treasurer was and is authorized to appoint the license inspectors; that the city treasurer had and has the right to remove a license inspector for cause.”
*153 The learned judge seems to have assumed that the license inspectors were subordinate officers or employees of the bureau of the treasury; and, having adopted a construction which made the treasury a department, and the treasurer its head, arrived at the conclusion that the sole power of appointment and removal of those officers resided in the treasurer. A judgment for the city followed as a necessary result. The argument for the defendant in error is, for the most part, merely an elaboration of the court’s opinion. We do not think the assumption that the license inspectors were employees of the treasurer, can be sustained, and shall give the reasons for our belief later; but conceding, for the time being, that they were, we are still unable to find a warrant for the court’s conclusion. Section 2 of article 3 of the charter provides for six departments in the executive branch of the city government, and no more; and section 3 defines those departments. Among them is the department of finance, consisting of two bureaus, of one of which the city auditor, and of the other of which the city treasurer, is the head. No officer, or board, or commission, is placed at the head of the finance department. The treasurer is the head of a bureau, but the department consists of two bureaus, and the head of one of the bureaus is not the head of the department. Section 3 makes provision for the appointment of subordinate officers and employees by the heads of the departments ; but, in the nature of things that provision can apply only to departments for which heads are designated. It cannot apply to the department of finance because the charter leaves that department without a head. That the legislature so understood and intended, seems to be clearly indicated by section 5 of the same article, which, to relieve certain city officials, including the auditor and treasurer, for whose necessities in the way of assistance there is no head of a department to provide, from the embarrassment of being compelled to perform their duties without the requisite help, authorizes each of those officers to appoint a deputy for himself, and authorizes the city council to provide by ordinance *154 for the employment for them of still other assistants. The special authority to appoint a deputy would be useless if the treasurer were the head of a department, for the reason that he would already possess it to the fullest extent by the terms of section 3. Because the first portion of section 5 contains provisions affecting among other officers, the city treasurer and city auditor, and the remaining' portion commences with the words “each department,” the court seems to have concluded that from the situation of the words “ each department ” they must have been intended to relate to the provisions preceding them, and consequently to apply to the auditor and treasurer. By so construing the section the court makes the treasury a department, and assigns to the treasurer as its head, the full authority of the head of a department. Section 5 places the city clerk in the same category with the auditor and the treasurer, and the court’s construction of section 5 would give the city at least eight departments. But section 2 expressly limits the number to six, and the court by its construction would propose the impossible task of reconciling the two sections. It is not competent to courts to legislate. Because the lawmaking power has fixed the number of departments at six, there are six departments and no more ; and because the lawmaking power has seen fit to give to the treasury the rank only of a bureau of a department, it has no other rank.
But we think the court has entirely misapprehended the meaning of section 5. We find nothing in its language which would render necessary, or even suggest, the construction which the court placed upon it. The provision concerning the employment of assistance for the officers named, is one complete sentence, at the close of which the subject is exhausted. The remaining portion of the section relates to other, and totally different, subjects. It distinctly departs from the subject of the first portion, and, to understand it, we must go outside of the section which contains it. The first portion relates to certain individually specified city officials ; the second contains provisions concerning departments, *155 boards and commissions generally. The department and the board and the commission, of which it speaks, derive their entity and constitution, and receive their definition from other sections, and it is to these, and not to the immediately preceding language, that it has, or can have, reference. By the terms of those other sections, the treasury is not a department, and the treasurer is not the head of a department. The power of the treasurer to appoint and remove subordinates, is not found in section 8, and, except as to a single deputy which section 5 authorizes him to appoint, it is not found anywhere.
But, from the nature of the duties devolved by the ordinance upon the license inspectors, a license inspector is not a subordinate or assistant of the city treasurer. Assistants of an officer perform, under his supervision, duties which the law assigns to him. If their duties are independent of his and involve the rendition of services outside of his authority to exact, they are not his assistants. The applicant for a license deposits the necessary money with the city treasurer; Avhen this is done, the fire and police board passes upon his application, and, when it is granted, the treasurer issues the license. It is no part of the latter’s duty to bring persons whom the law requires to have a license, before the fire and police board to apply for one, or before himself to deposit their money; the law does not empoAver him to inquire into violations of the license law, and file complaints against its violaters, nor has he authority to see that the provisions of the ordinance are observed in the posting of licenses. All these services are exacted by the ordinance from the license inspector, and in performing them he is independent of the treasurer, and is not subject to his supervision or control. If the treasurer had authority from the charter, which he has not, to appoint his assistants other than the deputy, that authority Avould not embrace license inspectors.
Neither, with any propriety, can it be said that the license inspector is an assistant of the fire and police board, or of the department of law. Although the performance of his duties *156 may bring him into contact with each of these, and possibly with the bureau of the treasury, and he performs services in which they are all in some degree concerned, he is not specially responsible' to either, and none of them can claim him as its own subordinate officer or employee. In seeing that licenses are taken out and paid for, his work is, in a sense, done in behalf of both the fire and police board, and the treasurjq because the board grants the licenses, and the treasurer receives the money; and in making complaint against delinquents, his services are rendered in the department of law. Not being the employee of any one department, he is the servant of the municipality, and we must look outside of the law governing the departments to find the authority for his appointment. We think that section 23 of article 2 was intended to govern this and similiar cases. That section confers upon the city council the power to provide for the employment of such clerks, and other persons in any of the departments of the city government as the exigencies of the public service may demand. The word “ departments ” is not used here in a technical sense. Wherever in any branch or portion of the city government, services are necessary for which provision has not been made, the want may be supplied by the authority of that section. The purpose of the legislature was to enable the city council to see that the city government should be provided with the necessary facilities for the efficient transaction and conduct of its business.
The manner of the employment of the persons to whom section 23 of article 2 has reference, or of their discharge, is not prescribed in the charter, hence the ordinance must contain the necessary provisions, and the method designated by it must be pursued. We think the ordinance in question here is in entire harmony with the charter provisions; that the appointment of the plaintiff in error was regular and valid, and that the mayor not having concurred in the removal; the action of the treasurer in attempting it, was void.
But it is said that to enable the plaintiff in error to maintain this action, he should first proceed by mandamus to *157 compel his reinstatement. A reinstatement supposes a removal. Where the power of removal is confided to a hoard or officer, and the power is irregularly or wrongfully exercised, mandamus will lie to undo the act. But there must he a removal, and in the absence of power to remove, there can he no removal. The treasurer had no authority to discharge the license inspector, and the action he assumed to take was not a discharge. Morgan remained the license inspector and needed no reinstatement; and, as he performed the duties of his office, in so far as he could do so in the face of the active hostility of the treasurer, continuously down to the time of this proceeding, he is entitled to the salary which he has earned, amounting, according to the stipulation of counsel, to $800.
The judgment is reversed, and the district court instructed to enter a judgment in conformity with this opinion.

Reversed.